# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
**18-1874**
UNPUBLISHED

| | |
|---|---|
| DOREEN WYFFELS, | Chief Special Master Corcoran |
| Petitioner, | Filed: January 26, 2021 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Findings of Fact; Onset; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Lara Ann Englund*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On December 6, 2018, Doreen Wyffels filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq*.[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccination administered on October 4, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, consistent with the Table requirements for a SIRVA claim.

## I.     Relevant Procedural History

As noted above, the case was initiated in December 2018. On November 7, 2019, Respondent filed his Rule 4(c) Report asserting that the case was not appropriate for compensation under the terms of the Vaccine Act. ECF No. 15. Respondent argued that Petitioner failed to seek treatment for her shoulder injury for more than three months after her vaccination. *Id.* at 4. Respondent also noted that when Petitioner did seek treatment, "she reported that her shoulder was sore for the first few days, then improved and then became progressively worse . . . [suggesting] that she had the usual soreness associated with a vaccination, which improved . . . and she only developed more significant symptoms later." *Id.* Finally, Respondent asserted that, "[g]iven the delay in seeking treatment, there are no contemporaneous medical records that clarify the sequence of events." *Id.*[3]

From January 8 through February 13, 2020, Petitioner filed updated medical records, a supplemental affidavit, witness statement and letters from her treating physician and chiropractor. ECF Nos. 17, 19-20. Then, on February 14, 2020, Petitioner filed a motion for a ruling on the record ("Motion"). ECF No. 21. Respondent filed a response to the Motion on March 10, 2020 and, on March 24, 2020, Petitioner filed her reply. ECF Nos. 22-23.

An expedited hearing to resolve the issue of onset was scheduled to take place on January 15, 2021. Order, ECF No. 26. However, during the pre-hearing status conference, I expressed my view that due to the nature of the dispute (as evidenced in the parties' filings), the matter could be resolved simply on the papers. *See* Minute Entry, dated January 5, 2021. The matter is now ripe for adjudication.

## II.    Issue

At issue is whether the onset of Petitioner's left shoulder pain was within 48-hours after vaccination, as set forth in the Vaccine Injury Table for a SIRVA injury after receipt of the flu vaccine. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination). The Table's "Qualifications and Aids to Interpretation" ("QAI") for a SIRVA-based claim also require

---

[3] Respondent also asserted that Petitioner's symptoms were not limited to her left arm, but this argument will not be addressed herein.

that a petitioner's pain have occurred within this same 48-hour time frame. 42 C.F.R. § 100.3(c)(10).

### III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). I have discussed the factors to be considered in determining whether a petitioner has met their burden in several recent decisions. I fully adopt and hereby incorporate my prior discussion in section III of the following decisions: *Marrow v. Sec'y of Health & Hum. Servs.*, No. 17-1964V, 2020 WL 3639775 (Fed. Cl. Spec. Mstr. June 2, 2020); *Robinson v. Sec'y of Health & Hum. Servs.*, No. 17-1050V, 2020 WL 3729432 (Fed. Cl. Spec. Mstr. June 5, 2020); *Decoursey v. Sec'y of Health & Hum. Servs.*, No.18-870V, 2020 WL 4673228 (Fed. Cl. Spec. Mstr. July 9, 2020).

In sum, a special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of the petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). Moreover, a special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

### IV.   Finding of Fact

I make the following finding regarding onset after a complete review of the record to include all medical records, affidavits, Respondent's Rule 4 report, and briefing by the parties.  Specifically, I base the findings on the following evidence:

- Ms. Wyffels was administered a flu vaccine in her left shoulder on October 4, 2017. Ex. 1.

- In her affidavit, Ms. Wyffels averred "I remember the vaccination being particularly painful and felt the needle going into my arm." Ex. 4 at ¶ 4. In her supplemental affidavit Ms. Wyffels further stated that "I remember thinking . . . boy that one hurt, and I must have not relaxed my arm good enough. It bled, [the nurse] applied a band-aide and it had ached afterwards." Ex. 9 at 1.

- Arlene Lopez, Ms. Wyffels' coworker, submitted an affidavit dated January 20, 2020. Ex. 10. In it, she asserted that Ms. Wyffels "was complaining of her upper arm area being sore and not being able to move it like she normally could and this started in October 2017." *Id.*

- Ms. Wyffels presented to Douglas County Hospital, Alexandria Clinic on November 20, 2017 (a little over six weeks post-vaccination) with complaints of eye irritation. Ex. 2 at 20-21. The medical record documenting this visit does not indicate that Petitioner complained of shoulder pain. *Id.*

- In her supplemental affidavit, Ms. Wyffels stated that she did not mention her left should pain during her November 2017 appointment because "I only talk about my personal health with my doctor. . .". Ex. 9 at 1.

- On January 8, 2018 (three months and four days after vaccination), Ms. Wyffels presented to her primary care physician, Dr. Jenessa Warzecha, with a complaint of left shoulder soreness "ever since she received her flu shot on October 4th." Ex. 2 at 21-22. It was noted that Ms. Wyffels' shoulder "was sore, but not severe, for the first few days, then improved, then became progressively worse." *Id.* at 21.

- On January 27, 2020, Dr. Warzecha submitted a letter recounting Ms. Wyffels' January 8, 2018 examination. Ex. 11. In it, she recalls that Ms. Wyffels "indicated to me [her left sided shoulder pain] was new and had occurred since her flu shot was given on 10/4/2017." *Id.* She further notes that Ms. Wyffels "certainly has had continued pain since this time, MRI evidence of bursitis, and side effects from medications used to treat this . . .". *Id.*

- Ms. Wyffels underwent an initial physical therapy evaluation on January 15, 2018. Ex. 3 at 1-2. She reported "feeling random onset of [left] shoulder pain that started when she got the flu shot this year. She had no pain in her shoulder and then after the shot started to have more and more pain." *Id.* at 1. Ms. Wyffels attended four physical therapy sessions between January 15, 2018 and February 20, 2018. *Id.* at 1-9.

- On April 18, 2018, Ms. Wyffels underwent an MRI of her left shoulder. Ex. 2 at 35-38. The record indicates that Ms. Wyffels suffered from left shoulder pain "since receiving flu shot in October 2017." *Id.* at 36.

- Ms. Wyffels presented to Dr. Warzecha on September 7, 2018. Ex. 5 at 1-6. The medical note documenting this visit indicates that her shoulder pain had been present "since last fall/flu shot." *Id.* at 5.

- Dr. Barbara L. Dolezal, Ms. Wyffels' chiropractor, submitted a letter summarizing her interaction with Petitioner during a December 9, 2019 examination. Ex. 13 at 6. Dr. Dolezal stated that Ms. Wyffels "noted that she had intense L[eft] upper arm/shoulder pain and swelling with limited and painful

4

>range of motion following a flu immunization 2 ½ years before, commonly known as SIRVA." *Id.*

- In her supplemental affidavit, Ms. Wyffels asserted that she did not seek medical treatment for her arm prior to January 8, 2018 because "[e]veryone knows that the arm is sore for a couple of days after a flu shot, and I had never heard of SIRVA before. After a while, I just thought it was because I was overusing it with carrying the grandkids and playing with them all the time." Ex. 9 at 1. Ms. Wyffels also asserted that, due to a worldwide flu epidemic, "[o]ur own local hospital said no visitors, and I remember the clinic indicating not to come in unless you really needed to be seen by a doctor." *Id.*

The above items of evidence collectively establish that Ms. Wyffels' shoulder pain most likely began within 48 hours of receiving the October 4, 2017 flu vaccine. I recognize that Petitioner's medical records do not reflect a precise date of onset, and also that the vague temporal references to onset in the record (i.e., "*since* receiving the flu shot in October 2017 . . . ") allow for the possibility that onset could have occurred more than 48 hours from vaccination. However, there is no counter-evidence undercutting Ms. Wyffels' contention that her pain began close-in-time to vaccination, and she consistently reported this issue.

Admittedly, there is evidence of an intervening medical appointment (approximately six weeks post-vaccination) in November 2017 that makes no mention of the purported onset. Ex. 2 at 20-21. However, I do not find that this single record rebuts Petitioner's onset contention. Petitioner explained that she did not mention her shoulder pain during this visit because "I only talk about my personal health with my doctor." Ex. 9 at 1. While this explanation is somewhat opaque, I conclude that Petitioner's intent is to differentiate the purpose for this medical visit (an eye appointment) from a more comprehensive visit with a personal care physician – a distinction that is not unreasonable. A single intervening medical encounter where only one issue is addressed is not enough to *disprove* onset, especially given the overwhelmingly consistent assertions about close-in-time onset at all subsequent medical encounters.

Moreover, although Ms. Wyffels did not seek treatment for her left shoulder injury until approximately three months following her October 4, 2017 vaccination, I do not find this delay to be dispositive regarding the issue of onset. Indeed, Ms. Wyffels' medical records and affidavits reflect a pattern similar to other SIRVA claims, in which injured parties reasonably delay treatment, often based on the assumption that their pain is likely transitory. *See, e.g., Tenneson v. Sec'y of Health & Human Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *review denied,* 142 Fed. Cl. 329 (2019), (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Human Servs.*, 17-830V, 2019 WL

5

1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because petitioner underestimated the severity of her shoulder injury); *Knauss v. Sec'y of Health & Human Servs*., 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (noting a three-month delay in seeking treatment).

Finally, Respondent asserts that when Ms. Wyffels did seek treatment, she "reported that her shoulder was sore for the first few days, then improved, and then became progressively worse." Resp. at 3 *citing* Ex. 2 at 21-22. Respondent maintains that this statement "suggests that [Petitioner] had the usual soreness associated with a vaccination, which improved . . . and she only developed more significant symptoms later." Resp. at 3. While Ms. Wyffels did report some initial improvement, her medical records and affidavits support her contention that her symptoms worsened over time and had not resolved by her September 7, 2018 appointment with Dr. Warzecha. *See, e.g.,* Ex. 3 at 1; Ex. 9 at 1; Ex. 5 at 5. At worst, this evidence supports a determination that Petitioner's overall severity of injury does not justify a substantial pain and suffering award – *not* that onset is not consistent with the Table.

Accordingly, I find there is preponderant evidence to establish that the onset of Ms. Wyffels' left shoulder pain occurred within 48 hours of the October 4, 2017 flu vaccination.

### V.     Scheduling Order

Given my finding of fact regarding onset – and specifically that it is consistent with the Table requirements of a SIRVA claim – Respondent shall show cause, by no later than **Friday, March 12, 2021**, why Petitioner should not be found to be entitled to compensation.

Any questions about this order or about this case may be directed to OSM staff attorney **Reiko Suber at (202) 357-6378 or Reiko_Suber@cfc.uscourts.gov.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master
